**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

In re:

RAY A. EDGEWORTH
PEGGY W. EDGEWORTH,

      Debtor.
_____/

Case No. 16-21474-EPK

Chapter 7

**RES-GA ELEVEN, LLC'S REPLY TO DEBTORS'**
**RESPONSE TO OBJECTION TO DEBTORS' CLAIMED EXEMPTIONS**

RES-GA ELEVEN, LLC ("**RES-GA**") by undersigned counsel and pursuant to 11 U.S.C. § 522(o)(4) files this Reply to the Response to its Objection to the Claimed Exemptions of the Debtors, Ray A. Edgeworth ("**Ray**") and Peggy W. Edgeworth ("**Peggy**" who along with Ray are collectively referred to as the "**Debtors**") (the "**Objection**") [ECF No. 31], as follows:

1. Debtors filed their Response to the Objection on December 12, 2016 [ECF No. 46].

2. Debtors allege that the Objection should be overruled because RES-GA purportedly only pled in a conclusory fashion that the Debtors' purchase of their Florida home was done "with the intent to hinder, delay or defraud RES-GA and their joint creditors."

3. This is simply inaccurate.

4. This court has previously held that "[d]irect proof of actual fraud is often very difficult to establish." *In re Model Imperial, Inc.*, 250 B.R. 776, 791 (Bankr. S.D. Fla. 2000) (citing *Dionne v. Keating (In re XYZ Options, Inc.)*, 154 F.3d 1262, 1271 (11th Cir. 1998)).

5. "Recognizing that direct evidence of fraud does not always exist, courts also allow fraudulent intent to be proven through circumstantial evidence and the surrounding circumstances of the transactions, including the "badges of fraud."" *Id.* (citing *Dionne*, 154 F.3ed at 1271-72). These badges include:

(1)     The transfer was to an insider [*in this case the Debtors convert non-exempt property into exempt property, as set forth in the Objection*];

(2)     The debtor retained possession or control of the property transferred after the transfer [*in this case the Debtors own the Florida homestead, as set forth in the Objection*];

(3)     The transfer was disclosed or concealed [*the Debtors purchased the Florida home with the nonexempt proceeds from the sale of their Alabama home after having been sued multiple time in Georgia, as is evidenced by the Debtor's schedules*];

(4)     Before the transfer was made the debtor had been sued or threatened with suit [*in this case the Debtors had been sued by at least four creditors at the time of their conversion of nonexempt property into the Florida homestead, as is evidenced by the Debtor's schedules*];

(5)     The transfer was of substantially all of the debtor's assets [*as is evidenced by the Debtor's schedules*];

(6)     The debtor absconded [*the Debtors purchased the Florida home with the nonexempt proceeds from the sale of their Alabama home, as is set forth in the Objection*];

(7)     The debtor removed or concealed assets [*the Debtors purchased the Florida home with the nonexempt proceeds from the sale of their Alabama home, as is set forth in the Objection*];

(8)     The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred [*the Debtors owned the nonexempt assets used to purchase the exempt Florida homestead in this case*];

(9) The debtor was insolvent or became insolvent shortly after the transfer was made [*while more discovery is needed including the deposition of Peggy who did not appear at her Rule 2004 examination due to family and personal issues, as set forth in the Objection, Ray testified that they were "under water" on all their debts*];

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred [*in this case the Debtors had been sued by at least four creditors before they converted their nonexempt property into exempt property, as evidenced by the schedules*]; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor [this badge is not applicable].

*Id*.

6. Moreover, the Objection points to specific examples of these badges of fraud.

7. The first specific example is the November 17, 2008, demand letter for over $416,000.00 sent by the FDIC as Receiver of Integrity Bank to Ray as a result of PR's failure to timely make payments and demanded payment on the Guaranties of the Debtors, a copy of which is attached thereto as Exhibit "C".

8. The next instance are the following joint debts listed in Debtor's Bankruptcy Schedules [ECF No. 1] that were outstanding at the time of the purchase of the Debtor's purchase of the Port St. Lucie house claimed as exempt:

    a. Branch Banking and Trust - $163,213.00 (incurred in 2007);

    b. Hope Lumber & Supply Co. – unknown amount (incurred in 2007);

    c. LaFarge Building Materials, Inc. – unknown amount (incurred in 2007); and

    d. SunTrust Bank - $204,607.74 – (incurred in 2010).

9. Debtors' bankruptcy schedules reflect that they had already being sued by the creditors listed in paragraph 8 above when the Florida home was purchased on February 11, 2011:

    a. Branch Banking and Trust in the Superior Court had sued the Debtors in Gwinnet County, GA in 2009 as the case number listed is "09A-04208-10" [ECF No. 1, at page 23 of 50];

    b. Hope Lumber and Supply Co. had sued the Debtors in Gwinnet County, GA in 2007 as the case number listed is "07-C-00971-S3" [ECF No. 1, at page 24 of 50];

    c. LaFarge Building Materials, Inc. had sued the Debtors in Gwinnet County, GA in 2007 as the case number listed is "09-M-12294" [ECF No. 1, at page 25 of 50]; and

    d. SunTrust Bank had sued the Debtors in Gwinnet County, GA in 2007 as the case number listed is "10-C-00311-S1" [ECF No. 1, at page 24 of 50].

10. Finally, at Ray's 2004 examination conducted by RES-GA on November 8, 2016, Ray testified that at the time of the purchase of the Florida homestead, the Debtors were "underwater" on most of their personal obligations.

11. Debtor's Response suggests that the Objection should be overruled because RES-GA failed to attach a "smoking gun" exhibit where the Debtors admit in writing that they purchased the Florida home with the intent to hinder, delay or defraud their creditors or pointed to Ray's testimony at his Rule 2004 examination where he broke down and admitted to undersigned that he and Peggy purchased the Florida home with the intent to hinder, delay or defraud their creditors.

12. The Debtor's position is invalid and the pleading requirement that is suggested by the Debtors is not what is required for the court to sustain the Objection:

> The Debtor did not break down on the stand a la Perry Mason at the February 17, 2011 evidentiary hearing and confess her intent to hinder, delay, or defraud creditors. The Trustee did not introduce a serendipitous Facebook posting where the Debtor announced nefarious aims. The Debtor did, however, fail to disclose in her July 24, 2010 sworn filings that she had in April sold nonexempt securities which yielded $42,309.13. She testified at the February 17, 2011 evidentiary hearing that the proceeds of that previously undisclosed April 29th sale were used to improve the homestead she acquired shortly before the bankruptcy filing. She did not amend her Statement of Financial Affairs to disclose the April 29th sale until the day of her second 341 Meeting of Creditors, after the Trustee had hired counsel to look into the matter. How the Debtor managed to forget about a $42,309.13 securities sale three months before her bankruptcy filing is interesting. It is especially interesting in light of the fact that she used that money to improve a homestead which she claimed as exempt on Schedule C.

*In re Osejo*, 447 B.R. 352, 354 (Bankr. S.D. Fla. 2011) (sustaining trustee's objection to homestead exemption pursuant to 11 U.S.C. § 522(o)(4)).

13. The Objection should be sustained because several badges of fraud exists and have been sufficiently plead by RES-GA.

**WHEREFORE**, RES-GA ELEVEN, LLC respectfully requests that the Court enter an order sustaining its objection to the Debtor's claimed exemption in the Port St. Lucie House and Debtors should only be permitted to claim no more than the $5,000.00 allowed homestead exemption under Alabama law in the Port St. Lucie House and providing for such further relief deemed appropriate under the circumstances.

Dated:  December 13, 2016   **LAW OFFICE OF MARK S. ROHER, P.A.**
*Counsel for RES-GA ELEVEN, LLC*
5701 N. Pine Island Rd., Suite 301
Fort Lauderdale, Florida 33321
Email:  mroher@markroherlaw.com
Telephone:  (954) 353-2200
Facsimile:  (954) 724-5047

By:  */s/ Mark S. Roher*
      Mark S. Roher
      Florida Bar No. 178098

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of December, 2016, a true and correct copy of the foregoing was served by CM/ECF on all parties listed below.

/s/ *Mark S. Roher*
Mark S. Roher

Kristopher Aungst, Esq. on behalf of Trustee Nicole Testa Mehdipour
kea@trippscott.com, lxc@trippscott.com

Michael Foster on behalf of Trustee Nicole Testa Mehdipour
mcf@trippscott.com, iah@trippscott.com

Nicole Testa Mehdipour
Trustee@ntmlawfirm.com,
TRUSTEE_CMECF_Service@ntmlawfirm.com;FL80@ecfcbis.com;ntm@trustesolutions.net;cm_ecf@mehdipourtrustee.com;bcasey@mehdipourtrustee.com;BCasey@ntmlawfirm.com

Sean M Murray, Esq on behalf of Debtor Ray A. Edgeworth
smurray1710@comcast.net

Sean M Murray, Esq on behalf of Joint Debtor Peggy W. Edgeworth
smurray1710@comcast.net

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Mark S. Roher, Esq. on behalf of Creditor RES-GA Eleven, LLC
mroher@markroherlaw.com,
ecf@markroherlaw.com,markroher@me.com,ecf2@markroherlaw.com

Norman L. Schroeder II, Esq. on behalf of Debtor Ray A. Edgeworth
nschroeder@nlsbankruptcy.com,
mnewman@nlsbankruptcy.com;dfinegold@nlsbankruptcy.com

Norman L. Schroeder II, Esq. on behalf of Joint Debtor Peggy W. Edgeworth
nschroeder@nlsbankruptcy.com,
mnewman@nlsbankruptcy.com;dfinegold@nlsbankruptcy.com